**Opinion filed February 12, 2026**



In The

# Eleventh Court of Appeals

_____

## No. 11-25-00248-CV

_____

## IN THE INTEREST OF T.B., K.B., T.B., K.B., CHILDREN

**On Appeal from the 326th District Court**
**Taylor County, Texas**
**Trial Court Cause No. 12023-CX**

**M E M O R A N D U M   O P I N I O N**

This is an accelerated appeal from the trial court's order terminating the parental rights of the mother and father of T.B., K.B., T.B.2., and K.B.2.[1]  Both parents appealed with each parent presenting a single issue challenging the sufficiency of the evidence to support the trial court's finding that the termination of their parental rights is in the children's best interest.  *See* TEX. FAM. CODE ANN. § 161.001(b)(2) (West Supp. 2025).  We affirm the trial court's order.

---

[1]We use initials to refer to the children and numbering to distinguish the children from one another. *See* TEX. R. APP. P. 9.8(b).

*Termination Findings and Standards*

The termination of parental rights must be supported by clear and convincing evidence. FAM. § 161.001(b). To terminate one's parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1), and that termination is in the best interest of the children. *Id.* § 161.001(b)(2). Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007 (West 2019).

In this case, the trial court found that clear and convincing evidence established that Appellants: (1) knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered the physical or emotional well-being of the children; and (2) engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered the physical or emotional well-being of the children. *See id.* § 161.001(b)(1)(D), (E). The trial court further found that termination of Appellants' parental rights was in the children's best interest. *See id.* § 161.001(b)(2).

In reviewing a legal sufficiency challenge, we must decide whether "a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.W.*, 645 S.W.3d 726, 741 (Tex. 2022). Cognizant of the required appellate deference to the factfinder, "we look at all the evidence in the light most favorable to the finding, assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, and disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.* (internal quotation marks omitted). "However, we may not disregard 'undisputed facts that do not support the finding,'" and the factfinder is "the sole arbiter of the witnesses' credibility and demeanor." *Id.* (first quoting *In re J.F.C.*, 96 S.W.3d 256,

2

266 (Tex. 2002); and then quoting *In re J.F.-G.*, 627 S.W.3d 304, 312 (Tex. 2021)). As such, when considering the credibility of the evidence presented, we may not substitute our judgment for that of the factfinder. *J.F.-G.*, 627 S.W.3d at 316.

In assessing whether the evidence is factually sufficient, we weigh the disputed evidence that is contrary to the finding against all the evidence that favors the finding. *In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018). We give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009); *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002); *In re L.C.C.*, 667 S.W.3d 510, 512 (Tex. App.—Eastland 2023, pet. denied). Because a trial court conducting a de novo hearing "may also consider the record from the hearing before the associate judge," we may do so as well if it is included in the appellate record, as it is here. *See* FAM. § 201.015(c) (West 2020); *In re A.L.M.-F.*, 593 S.W.3d 271, 277 (Tex. 2019) ("[R]eview under [S]ection 201.015 is not entirely independent of the proceedings before the associate judge.").

With respect to the best interest of the children, no unique set of factors need be proved. *L.C.C.*, 667 S.W.3d at 513; *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). Further, the best interest determination does not restrict the proof to any specific factor or factors. *In re J.S.*, 687 S.W.3d 541, 547 (Tex. App.—Eastland 2024, no pet.). However, courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to: (1) the desires of the children; (2) the emotional and physical needs of the children now and in the future; (3) the emotional and physical danger to the children now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these

individuals to promote the best interest of the children; (6) the plans for the children by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.*

To support a best interest finding, the Department is not required to prove each *Holley* factor; in some circumstances, evidence of the presence of only one factor will suffice. *C.H.*, 89 S.W.3d at 27; *In re D.M.*, 452 S.W.3d 462, 473 (Tex. App.—San Antonio 2014, no pet.). Additionally, the same evidence that proves one or more statutory grounds for termination may also constitute sufficient, probative evidence illustrating that termination is in the children's best interest. *C.H.*, 89 S.W.3d at 28; *C.J.O.*, 325 S.W.3d at 266.

The absence of evidence of some *Holley* considerations does not preclude the factfinder from reasonably inferring or forming a strong conviction or belief that termination is in the children's best interest, particularly if the evidence indicates that the parent-child relationship and the parent's conduct has endangered the safety and well-being of the children. *C.H.*, 89 S.W.3d at 27. This is so because the best interest analysis evaluates the best interest of the children, not the parent. *J.S.*, 687 S.W.3d at 548; *In re E.C.R.*, 638 S.W.3d 755, 767 (Tex. App.—Amarillo 2021, pet. denied) (citing *In re B.C.S.*, 479 S.W.3d 918, 927 (Tex. App.—El Paso 2015, no pet.)).

In this regard, the factfinder may measure a parent's future conduct by his or her past conduct in determining whether termination of a parent's parental rights is in the children's best interest. *J.S.*, 687 S.W.3d at 548; *In re Z.R.M.*, 665 S.W.3d 825, 829 (Tex. App.—San Antonio 2023, pet. denied); *In re D.S.*, 333 S.W.3d 379, 384 (Tex. App.—Amarillo 2011, no pet.). The factfinder may infer that a parent's

past conduct that endangered the safety and well-being of the children may recur in the future if the children are returned to the possession of the parent. *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *May v. May*, 829 S.W.2d 373, 377 (Tex. App.—Corpus Christi–Edinburg 1992, writ denied). Additionally, the factfinder may infer from a parent's past inability to meet the children's physical and emotional needs an inability or unwillingness by the parent to meet the children's physical and emotional needs in the future. *J.D.*, 436 S.W.3d at 118; *see also In re A.S.*, No. 11-16-00293-CV, 2017 WL 1275614, at *3 (Tex. App.—Eastland Mar. 31, 2017, no pet.) (mem. op.).

*The Evidence Presented at Trial*

The Department contacted Appellants in April 2022 following the birth of their sixth child, K.B.2. A Family Based Safety Services[2] [FBSS] case was opened on August 25, 2022. The mother revealed that she began drinking alcohol and using methamphetamine when she was fourteen years old and admitted that she used cocaine and methamphetamine while pregnant. According to the mother, the father sold drugs and used cocaine "almost daily." He was convicted in May 2019 for possessing tetrahydrocannabinol and placed on community supervision for five years. The father possessed methamphetamine in his first month of probation. He also tested positive for cocaine, marihuana, opiates, benzodiazepine, and methamphetamine while on probation.

In August 2022, the father was confined in the Taylor County Detention Center. His probation was revoked that month, and he was sentenced to incarceration in the Institutional Division of the Texas Department of Criminal

---

[2]"Family-based safety services are protective services provided to a family whose children are not in the conservatorship of the Department." 40 TEX. ADMIN. CODE ANN. § 700.710 (2021). The Department's Child Protective Services Division provides family-based safety services to families and children "to: (1) protect the children from abuse and neglect; (2) help the family reduce the risk of future abuse or neglect; and (3) prevent the removal of the children from their home." *Id*.

Justice for a term of three years for the possession-of-tetrahydrocannabinol offense and to confinement for sixty days in the Taylor County Jail for the possession-of-methamphetamine offense. Then in September 2022, he was sentenced to confinement for 120 days in the Taylor County Jail for driving while intoxicated, which offense he committed in July 2022. The mother completed inpatient drug treatment in November 2022, but, while in the treatment facility, she engaged in drug use and then refused follow-up treatment. Due to the mother's continued drug use, the Department closed the mother's FBSS case in April 2023 and was granted temporary managing conservatorship of Appellants' six children. Drug testing around the time of the children's removal revealed that the mother and the two youngest children, T.B.2. and K.B.2., were positive for methamphetamine.

The Department created family plans of service for Appellants that required them, among other things, to secure stable housing and maintain sobriety. The mother committed misdemeanor theft in August 2023, a few months before the father was released from prison. Before pleading guilty and beginning her ten-day jail sentence in May 2024, the mother attended inpatient treatment for a second time from January to March 2024.

By August 30, 2024, Appellants had completed enough of their service plan requirements to obtain a monitored return of the children. Significantly, the monitored return of the children to the parents ended on December 10, 2024 due to Appellants relapse; Appellants and the two youngest children testing positive for cocaine, with the mother and K.B.2 also testing positive for methamphetamine. The father denied cocaine use and attributed his test results to the mother's use, but he tested positive for cocaine again in March 2025.

After the mother tested positive for methamphetamine in February 2025, she admitted herself into Serenity House to undergo inpatient treatment for a third time.

She was still positive for methamphetamine in March 2025 upon completing treatment, but she tested negative for all substances in May 2025.

The final termination hearing commenced May 9 and resumed June 12, 2025. The father was not present for the second day of the hearing. In support of its recommendation to terminate Appellants' parental rights to the four younger children, the Department presented the testimony of three witnesses: (1) Marissa Black, the FBSS caseworker; (2) Ethan Pfrimmer, the permanency case manager; and (3) Alex Garcia, the children's court-appointed special advocate. The mother, who was in custody at the time, also testified.

The Department did not seek termination of Appellants' parental rights to their fourteen-year-old and seventeen-year-old sons. At the time of the final hearing, Appellants' oldest son had graduated high school and had two children of his own. He spent most nights with the mother of his children, sometimes stayed at a family friend's home, "and consider[ed] himself to be an adult." The fourteen-year-old son was living in an unauthorized placement but was regularly attending school and had no desire to be adopted. In fact, he ran away when the Department attempted to place him in a foster home.

The Department recommended terminating Appellants' parental rights to the four younger children. T.B. and K.B., ages twelve and ten, lived in separate foster homes. The two youngest children, six-year-old T.B.2. and three-year-old K.B.2., were in a placement together. Pfrimmer testified that K.B.'s caregiver was willing to adopt K.B. and T.B. T.B.2. and K.B.2. were not in an adoptive home, but their foster parents agreed to care for them until the Department could find a permanent placement. Since the time that monitored return of the children to the parents ended due to the parents' relapse in drug usage, the siblings participated in weekly virtual

visits and were able to visit each other in person once a month. According to Pfrimmer, all the children expressed the desire to return to Appellants' care.

As the children's special advocate, Garcia did not support the Department's termination recommendation based on the likelihood of the children being separated. And, based on the mother's significant behavioral changes after her most recent inpatient treatment program, he urged the trial court to give Appellants more time.

Pfrimmer agreed that the mother's mentality appeared to be different after her recent stay at Serenity House. But he testified that the Department's primary concern is Appellants' failure to secure and maintain a safe, drug-free home environment for their children.

The mother acknowledged her history of substance abuse and relapses after treatment, but she testified that this time was different: "This time . . . I did it for myself. I had to put everything else aside and realize that if I really want my recovery, I have to want it for myself, and I have to take those steps into, you know, continuing my sobriety." She regularly attended Narcotics Anonymous (NA) meetings and relied on her recovery coach and counselors.

After Serenity House, the mother lived with the father in their shared home until he tested positive for cocaine around two weeks later. The mother checked into 180 House, a transitional home after inpatient treatment, and returned home the day before she testified. Although the father was supposed to move out of the home, he "stayed there pretty late" the night before the final hearing. The mother lamented that even though they were together for nineteen years, they did not truly know each other because of their drug use. They were no longer in a romantic relationship but were "working on getting back together."

At the time of the hearing, the mother testified that she did not intend to stay in the home permanently and was searching for alternative housing options that were

appropriate for her and the children. She was also working part time and relied on the father for financial assistance.

After the hearing, the associate judge assigned by the district court terminated each parent's parental rights to T.B., K.B., T.B.2., and K.B.2. under Section 161.001(b)(1)(D), and (E), and found termination to be in the best interest of the children. *See* FAM. § 161.0001(b)(1)(D), (E), (b)(2). The associate judge dismissed the termination suit involving the seventeen-year-old child, and Appellants were appointed possessory conservators of their fourteen-year-old child.

The referring district court granted Appellants' request for a de novo hearing. The parties reconvened on July 24, 2025, but presented no additional evidence. Upon reviewing the transcripts and evidence, the referring district court issued its termination order as to the four younger children pursuant to Section 161.001(b)(1)(D), (E), and (b)(2). This appeal followed.

*Best Interest of the Children*

Each parent challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination of his or her parental rights is in the best interest of the children. "'[B]est interest' is a term of art encompassing a much broader, facts-and-circumstances based evaluation that is accorded significant discretion." *In re Lee*, 411 S.W.3d 445, 460 (Tex. 2013) (quoting *Holley*, 544 S.W.2d at 371–72). We reiterate that the trial court, as the trier of fact, is the sole judge of the witnesses' credibility. *J.F.-G.*, 627 S.W.3d at 312. We are not at liberty to disturb the determinations of the factfinder so long as those determinations are not unreasonable. *Id.* at 311–12; *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). Giving the requisite due deference to the trial court, we hold that, based on the evidence in the record and the application of the *Holley* factors, the trial court could have formed

9

a firm belief or conviction that termination of each parent's parental rights was in the best interest of the children. *See Holley*, 544 S.W.2d at 371–72.

Evidence of each *Holley* factor is not required to support a best interest finding. *In re S.R.*, 452 S.W.3d 351, 366 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); *In re S.O.*, No. 05-22-01019-CV, 2023 WL 2237084, at *11 (Tex. App.—Dallas Feb. 27, 2023, no pet.) (mem. op.). In other words, the absence of evidence regarding some of these factors does not preclude a best interest finding, "particularly if [the] undisputed evidence shows the parental relationship endangered the child's safety." *In re N.T.*, 474 S.W.3d 465, 477 (Tex. App.—Dallas 2015, no pet.) (quoting *In re A.E.*, No. 05-14-01340-CV, 2015 WL 1184179, at *6 (Tex. App.—Dallas Mar. 16, 2015, pet. denied) (mem. op.)). Consequently, "evidence relating to one single factor may be adequate in a particular situation to support a finding that termination is in the best interest[] of the child." *J.S.*, 687 S.W.3d at 552 (quoting *In re K.S.*, 420 S.W.3d 852, 855 (Tex. App.—Texarkana 2014, no pet.)). And evidence that is relevant to Section 161.001(b)(1) termination grounds may be probative of a child's best interest. *See In re E.C.R.*, 402 S.W.3d 239, 249–50 (Tex. 2013) (citing *C.H.*, 89 S.W.3d at 28).

Neither parent challenges the trial court's findings that he or she endangered the children as set forth in Section 161.001(b)(1)(D) and (E). So long as the evidence supports those findings, they are valid grounds for termination. *See E.C.R.*, 402 S.W.3d at 249–50; *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *J.S.*, 687 S.W.3d at 552. In this regard, the evidence that each parent endangered their children could be considered by the factfinder in determining whether termination was in the children's best interest. *See E.C.R.*, 402 S.W.3d at 249–50; *In re C.J.O.*, 325 S.W.3d at 266.

The record demonstrates that Appellants' endangering conduct was attributable to the persistent drug use of each, which "implicates most of the *Holley* factors." *In re E.D.*, 682 S.W.3d 595, 607 (Tex. App.—Houston [1st Dist.] 2023, pet. denied). A parent's continuing pattern of drug use can thus support a trial court's finding that termination of the parent's parental rights is in the best interest of the children, due to the "attendant risks to employment, housing, and prolonged absence from the children." *In re R.R.A.*, 687 S.W.3d 269, 279–281 (Tex. 2024). Moreover, as it relates to the mother, "[d]rug use during pregnancy supports a finding of direct injury to the child." *In re A.V.*, 697 S.W.3d 657, 659 (Tex. 2024) (relating to the trial court's endangerment findings).

While the Department was in contact with Appellants in 2022, the mother admitted to drug use during pregnancy, and the father was a daily cocaine user and drug dealer. The father was subsequently incarcerated for his drug-related criminal activity. While the mother was working services for her FBSS case, she continued using methamphetamine. When the children were removed in April 2023, T.B.2. and K.B.2. tested positive for methamphetamine, which the trial court could consider in assessing the best interest of all four children. *See, e.g.*, *Cervantes-Peterson v. Tex. Dep't of Fam. & Protective Servs.*, 221 S.W.3d 244, 253, 254–55 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

Notwithstanding their history of substance abuse, Appellants were given the opportunity to regain custody of their children through a monitored return in 2024. However, a few months into the monitored return in 2024, drug test results for Appellants and the two youngest children were positive. The mother, who tested positive for cocaine and methamphetamine, admitted that she had relapsed. By contrast, the father denied cocaine use despite evidence to the contrary, such as his subsequent positive drug test results.

11

The evidence supports the conclusion that Appellants resumed illegal drug use soon after the children were returned to their care. A parent's decision to engage in illegal drug use during the pendency of a termination suit when the parent is at risk of losing a child is unquestionably contrary to the child's best interest. *See J.S.*, 687 S.W.3d at 551; *In re A.M.*, 495 S.W.3d 573, 580 (Tex. App.—Houston [1st Dist.] 2016, pet. denied).

As for the father, the trial court could consider his minimization of culpability and failure to properly address the Department's concerns regarding his drug use in its best interest finding as it relates to him. *See Holley*, 544 S.W.2d at 371–72; *In re A.H.*, No. 11-24-00075-CV, 2024 WL 3879987, at *7 (Tex. App.—Eastland Aug. 21, 2024, pet denied) (mem. op.) ("[Mother's] past behavior, minimization of her conduct, [and] drug use . . . permit the rational conclusion that relinquishing [the child] to her care would pose a substantial risk of harm to the child."). Unlike the mother, the father made no effort to demonstrate an ability to achieve sobriety after the monitored return ended. He was also not present for the second day of the final hearing, even though he had spent hours with the mother the night before. The trial court may infer from the father's failure to take the initiative to appear at trial or demonstrate sobriety that "he does not have the ability to motivate himself to seek out available resources needed now or in the future." *In re J.M.T.*, 519 S.W.3d 258, 270 (Tex. App.—Houston [1st Dist.] 2017, pet. denied). Therefore, the father's continued drug use—even after his incarceration and exposing his children to significant harm—weighs heavily in favor of the trial court's finding that terminating the father's parental rights is in the children's best interest. *See R.R.A.*, 687 S.W.3d at 281.

As for the mother, we recognize that the mother has taken steps toward achieving a drug-free lifestyle. She voluntarily admitted herself to Serenity House

after testing positive in February 2025, which was her third time participating in inpatient treatment since November 2022. By the time of trial, she was still engaged in outpatient treatment and attending Narcotics Anonymous (NA) meetings. Pfrimmer and Garcia observed a change in the mother's attitude toward recovery, and believed that she was committed to sobriety. But though "recent improvements made by [the parent] are significant, evidence of improved conduct, especially of short-duration, does not conclusively negate the probative value of a long history of drug use and irresponsible choices." *J.O.A.*, 283 S.W.3d at 346; *see In re A.H.*, 679 S.W.3d 817, 830 (Tex. App.—El Paso 2023, pet. denied) (mother's voluntary admission to an inpatient program after removal does not counteract her history of relapses and "pattern of decline upon receiving children back into her care"). Importantly, the monitored return of the children was not successful.

Accordingly, the record discloses several circumstances from which the trial court may have reasonably found that Appellants' drug use and attendant risks endangered the children. Such evidence supports the trial court's finding that terminating Appellants' parental rights was in the children's best interest.

As Appellants point out, the children did express the desire to return home. While we do not ignore the children's desires, it is only one factor that we consider in the overall best interest analysis. *See Holley*, 544 S.W.2d at 372; *cf. In re F.M.E.A.F.*, 572 S.W.3d 716, 732 (Tex. App.—Houston [14th Dist.] 2019, pet. denied) ("A child's love for a parent cannot be ignored as a reflection of the parent's ability to provide for the child's emotional needs."). Although a child's desires or wishes for residing with a parent is an important consideration in determining the best interest of the child, "it cannot override or outweigh evidence of danger to the child." *F.M.E.A.F.*, 572 S.W.3d at 732. Moreover, a child's expressed preference is not binding on the trial court; rather, it is only one factor, among others, that the

13

trial court considers in its best interest determination. FAM. § 153.009(c) (West 2014); *see Hart v. Kozik*, 242 S.W.3d 102, 109 (Tex. App.—Eastland 2007, no pet.) (citing *In re Marriage of Stockett*, 570 S.W.2d 151, 153 (Tex. App.—Amarillo 1978, no writ)).

Appellants further emphasize Garcia's testimony that the children were negatively affected after the monitored return to the parents ended and that separating the children is contrary to their best interest. It has long been recognized that repeatedly removing children from their parents' care and leaving them in a state of impermanence and uncertainty is detrimental to their physical and emotional well-being. *See Lehman v. Lycoming Cnty. Children's Servs. Agency*, 458 U.S. 502, 513–14 (1982) ("There is little that can be as detrimental to a child's sound development as uncertainty over whether he is to remain . . . under the care of his parents or foster parents, especially when such uncertainty is prolonged."). "To ensure that children's lives are not kept in limbo while judicial processes crawl forward, the Legislature requires termination proceedings conclude at the trial level within a year and a half from the date of a child's removal from the parent." *In re B.L.D.*, 113 S.W.3d 340, 353 (Tex. 2003) (citing FAM. § 263.401). In this case, each parent had three years to demonstrate the ability to adequately care for their children by achieving and maintaining sobriety, and providing a drug-free home environment for them. Their failure to do so within that period permits the rational inference that prolonging a decision regarding permanent placement of the children was not in their best interest. As such, the children's desires and lack of demonstrable improvements to their physical and emotional well-being since removal do not weigh against the trial court's best interest finding. *See Hart*, 242 S.W.3d at 109.

It is well-settled that "[s]tability and permanence are paramount in the upbringing of children." *See In re J.A.R.*, 696 S.W.3d 245, 257 (Tex. App.—

Houston [14th Dist.] 2024, pet. denied). As set forth above, neither parent demonstrated the ability to secure and maintain a safe, stable, drug-free home environment. *See J.W.*, 645 S.W.3d at 742 (considering the parent's unstable and uncertain living situation in upholding the trial court's best-interest finding). The trial court could have thus rationally concluded that relinquishing the children to Appellants' care again would subject them to a life of uncertainty and instability, which is contrary to their best interest. *See In re E.M.*, No. 11-24-00310-CV, 2025 WL 1240792, at *10 (Tex. App.—Eastland Apr. 30, 2025, no pet.) (mem. op.) (citing *In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied)).

Considering the evidence as it relates to each parent's actions and inactions, the emotional and physical danger to the children now and in the future, the emotional and physical needs of the children now and in the future, each parent's lack of parental abilities and stability, and each parent's criminal conduct and drug use, we hold that the evidence is legally and factually sufficient to support the trial court's finding that termination of each parent's parental rights is in the best interest of the children. *See J.W.*, 645 S.W.3d at 741; *Holley*, 544 S.W.2d at 371–72.

Accordingly, we overrule each parent's sole issue on appeal.

*This Court's Ruling*

We affirm the order of the trial court.


W. BRUCE WILLIAMS

JUSTICE


February 12, 2026

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.